UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 06-CV-5001 (JFB) (ETB)
_____

UMAR ORIENTAL RUGS, INC.,

Plaintiff,

VERSUS

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA a/k/a ST. PAUL TRAVELERS,

Defendant.

_____

MEMORANDUM AND ORDER
January 24, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Umar Oriental Rugs (hereinafter, "Umar" or "plaintiff") brought the instant lawsuit against defendant Travelers Property Casualty Company of America (hereinafter, "Travelers" or "defendant"), alleging breach of contract. Specifically, Umar alleges that Travelers breached the terms of an insurance policy with Umar. The central issue in the litigation is whether Travelers should be equitably estopped from denying coverage on the policy with Umar where Travelers cancelled the policy because of $1,150 that was due and owing on the policy even though Travelers was holding a $1,554 credit on another policy with Umar and, according to plaintiff, Travelers' authorized agent had agreed to transfer the credit to satisfy the money owed on the policy at issue.

Defendant moves for summary judgment, pursuant to Federal Rule Civil Procedure 56. Plaintiff cross moves for summary judgment pursuant to Federal Rule Civil Procedure 56. For the reasons stated below, the Court denies the cross-motions for summary judgment.

I. BACKGROUND

A. Factual Background

The facts described below are taken from the parties' depositions, affidavits, exhibits and defendant's Local Rule 56.1 statement of facts.[1] Upon consideration of a motion for

_____

[1]As defendant points out, plaintiff failed to comply with Local Civil Rule 56.1 in that plaintiff

summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York,* 422 F.3d 47, 50 (2d Cir. 2001).

In 2000, Umar contacted Travelers via its duly authorized agent Carlson and Carlson, Inc. (hereinafter, "Carlson"). Thereafter, Travelers issued to Umar the following insurance policies: (1) Commercial Inland Marine policy (CIM); (2) Commercial Auto policy (CA); (3) Commercial Umbrella policy (CU); and (4) Commercial General Liability policy (CGL). (*Id.*) In October 2005, defendant issued Umar a renewal of the Commercial Inland Marine policy (Number QT-660-3636B072-TIL-05) for the period October 3, 2005 to October 3, 2006 (hereinafter, "the Policy" or "the CIM Policy"). (Def.'s 56.1 Statement at ¶ 1.)[2] The Policy was written to provide insurance for Umar's stock of oriental rugs. (*Id.*) The Policy had a $500,000 limit (and a $5,000 deductible). (*Id.*) The Policy also contained a New Jersey-specific cancellation endorsement. (*Id.* at ¶ 8.)

On November 14, 2005, Travelers issued to Umar the first bill under the Policy, requiring a minimum payment of $1,156.00 against the total premium due of $4,375. (*Id.* at ¶ 2.) Travelers never received that payment. (*Id.* at ¶ 3.) According to plaintiff, the owner of Umar, Ahsan Zubair, informed Doug Carlson of Carlson, the agent of Travelers, in December 2005 or January 2006 that money credited to another insurance policy between the parties should be applied to the account of the Policy in question and Carlson agreed to execute such a transfer. (Zubair Dep. 84, 97-99, Mar. 9, 2007.) As discussed *supra,* whether this conversation and agreement took place between Zubair and Carlson is disputed by the parties.

---

neither filed a response to defendant's 56.1 Statement nor did it file its own 56.1 Statement for purposes of its cross-motion for summary judgment. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not comply with Rule 56.1, plaintiff's written submissions in connection with the cross-motions cite to, and attach as exhibits, the relevant portions of the record upon which plaintiff is relying. Thus, both the opposing party and the Court are clearly aware of the portions of the record upon which plaintiff relies in support of its motion, and defendant has not identified any prejudice arising from the plaintiff's failure to comply with Rule 56.1. Accordingly, in the exercise of its broad discretion, the Court will not deny plaintiff's motion based upon its failure to comply with Rule 56.1, but rather has fully considered plaintiff's opposition to defendant's summary judgment motion, as well as its cross-motion, on the merits. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 n.2 (2d Cir. 2003) (excusing failure to comply with Local Civil Rule 56.1 where the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Williams v. R.H. Donnelly, Inc.,* 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

---

[2] Where defendant's 56.1 statement is cited, plaintiff has not disputed that fact or has offered no evidence to controvert such fact.

2

On December 14, 2005, Travelers issued a Notice of Cancellation for Non-Payment of Premium on the Policy. The notice stated:

> We are pleased to have you as a customer and would like to continue to provide your insurance. Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice is cancelled on the effective date of cancellation shown above, and at the time the policy became effective. We will refund any premium due you. We regret having to take this action, and will be pleased to reinstate this coverage if we receive your payment on or before the effective date of cancellation. In that event, we will send you a notice of reinstatement continuing your coverage.

(Def.'s 56.1 Statement at ¶ 3.) The notice identified January 3, 2006 as the effective date of cancellation, which is more than 10 days from the date of the notice, as required by New Jersey law. (*Id.* at ¶ 4.) The notice required payment of $4,397, the total amount due under the Policy. (*Id.*) Travelers mailed the notice of cancellation via first-class mail on December 14, 2005. (*Id.* at ¶¶ 9, 13.) Travelers' December 14, 2005 mailing of the notice of cancellation is confirmed by a United States Postal Service Form PS 3877. (*Id.* at ¶ 5.) The Form PS 3877 is date-stamped December 14, 2005 and indicates that it was sent to Umar. (*Id.*)

Prior to the Policy's January 3, 2006 cancellation, Carlson also issued three separate memoranda to Umar warning that the Policy was subject to cancellation for nonpayment. (*Id.* at ¶ 6.) On January 3, 2006, the Policy was cancelled. In February 2006, after the cancellation, Umar requested and received a billing history from Carlson. (*Id.* at ¶ 7.) The February 2, 2006 report stated that the Policy (3636B072660) was cancelled in January for nonpayment of the premium. (*Id.*)

On May 22, 2006, plaintiff discovered a fire loss on its premises in Secaucus, New Jersey, and thereafter notified Travelers and filed a claim. Following the loss, plaintiff sent Travelers a check for $4,397, the amount alleged to be delinquent as related to the Policy. (*See* Delahunt Aff. at Exh. E, Exh. K at 114.) Travelers declined to accept payment, and issued Umar a return check for the same amount on June 12, 2006. (*See id.*)

B. Procedural History

Plaintiff filed its complaint on September 14, 2006. Travelers answered the complaint on November 15, 2006. On September 27, 2007, defendant moved for summary judgment. On November 21, 2007, plaintiff cross moved for summary judgment. The Court held oral argument on the motions on January 3, 2008.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins.*

3

*Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (noting that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

III. DISCUSSION

A. Cancellation of the Policy

Defendant argues that its cancellation of the Policy was valid and effective as a matter of law.[3] Cancellation of property/casualty policies in New Jersey is governed by regulations promulgated by the Department of Banking and Insurance. Specifically, Section 11:1-20.2 of the New Jersey Administrative Code ("Renewal, nonrenewal and cancellation requirements") states, in relevant part:

> (e) A policy shall not be cancelled for nonpayment of premium unless the insurer, at least 10 days prior to the effective cancellation date, has mailed or delivered to the insured notice as required in this subchapter of the amount of premium due and the due date. The notice shall clearly state the effect of nonpayment of premium shall be effective if payment of the amount due is made prior to the effective date set forth in the notice.
>
> ***
>
> (g) No nonrenewal or cancellation shall be valid unless notice thereof is

---

[3] At oral argument, it was confirmed by plaintiff's counsel that plaintiff agrees with Travelers that New Jersey law applies to the instant case.

4

sent;

\*\*\*

(i) No nonrenewal or cancellation shall be valid unless notice thereof is sent;
    (1) By certified mail; or
    (2) By first class mail, if at the time of mailing the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured, and the insurer has retained a duplicate copy of the mailed notice.

The Policy contains a New Jersey-specific cancellation endorsement, which, according to the defendant, was drafted to comply with Section 11:1-20.2. *See* Delahunt Aff. Ex. A. The endorsement states in relevant part:

7. Cancellation of Policies in Effect For 60 Days or More

    (a) if this policy has been in effect for 60 days or more, or is a renewal of a policy issued, we may cancel this policy for one or more of the following reasons:

    (1) Nonpayment of premium;

\*\*\*

    (b) If we cancel this policy based on Paragraphs 7.a.(1) or (2) above, we will mail or deliver a written notice, to the first Named Insured and any person entitled top notice under this policy, at least 10 days before the effective date of cancellation . . .

    (c) In the notice of cancellation which is sent to the First Named Insured, we will state the reason for the cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

    (d) Notice will be sent to the last mailing address known to us, by:

    (1) Certified mail; or

    (2) First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

*Id.*

Travelers mailed the notice of cancellation on December 14, 2005. *See* Delahunt Aff. Ex. C; Ex. D. The notice stated that the effective date of cancellation was January 3, 2006, which was more than 10 days from the date of the notice. The notice also stated that the amount due was $4,397.00. *See* Delahunt Aff. Ex. C. The notice further indicated that payment was due January 3, 2006. *Id.* The notice further advised Umar:

"We are pleased to have you as a customer and would like to continue to provide your insurance. Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice is cancelled on the

effective date of cancellation shown above . . . . We regret having to take this action, and will be pleased to reinstate coverage if we receive your payment on or before the effective date of cancellation. In that event, we will send you a notice of reinstatement continuing your coverage."

*Id.* The notice stated that the reason for cancellation was nonpayment of premium. Travelers sent the notice by first-class mail, as confirmed by the date-stamped Form PS 3877. *See* Delahunt Aff. Ex. D. The New Jersey courts have specifically recognized that Form 3877 constitutes proof of mailing. *See Ward v. Merced*, 650 A.2d 10 (N.J. App. Div. 1994), *cert. den.*, 658 A.2d 299 (N.J. 1995).

Although plaintiff suggests in a conclusory fashion that it did not receive the notice of cancellation (*see* Zubair Dep. 30, Mar. 9, 2007), there is no evidence to support that conclusory statement. Under New Jersey law, "'cancellation may be effective whether or not the insured has actually received the notice of cancellation since proof of mailing, not proof of receipt is the determinative factor' . . . proof of mailing, not proof of receipt is the touchstone." *Sanchez v. Jilani*, 2006 WL 2873712, at *2 (N.J. Sup. Ct. App. Div. Oct. 6, 2006) (quoting *Weathers v. Hartford Ins. Group,* 390 A.2d 548 (N.J. 1978)). Because it is undisputed that defendant complied with the necessary mailing provisions to effectuate a proper notice of cancellation, plaintiff's conclusory assertion that it never received the notice of cancellation is insufficient to raise a factual issue as to whether Travelers followed the proper procedure for cancellation of the Policy.

In fact, in its written submissions on this motion, plaintiff concedes that Travelers followed the provisions of the New Jersey Administrative Code with respect to sending notice, but then argues that such cancellation should have no binding effect because Doug Carlson of Carlson, acting as Travelers' authorized agent, agreed to have the credit of the overpaid policy applied to the CIM Policy which was underpaid. *See* Plaintiff's Memorandum of Law, at 14 ("Although they [Travelers] may have followed the provisions of the New Jersey Administrative Code with respect to sending notice, the notice itself was predicated upon incorrect information.") Although plaintiff does not characterize this argument as equitable estoppel, the only theory upon which plaintiff can prevail in this lawsuit is under equitable estoppel.[4] Therefore, it is that issue to which the Court now turns.

---

[4] Although plaintiff suggests at various times in its papers that the cancellation is a nullity because payment was in fact made on the Policy, that argument is unavailing. It is undisputed that money was owed on the Policy at the time of cancellation, regardless of whether there was a credit on another policy between Travelers and Umar. Plaintiff has pointed to no evidence which suggests otherwise. Moreover, plaintiff has not cited anything which suggests that Travelers had a legal or contractual obligation to apply the credit on one policy to pay the balance owed on the other policy. Instead, plaintiff's argument is that it reasonably relied on the representation of Travelers' authorized agent that such a credit would be made and, thus, is properly asserted as a claim of equitable estoppel. At oral argument, when the Court sought to clarify plaintiff's position, plaintiff's counsel acknowledged that plaintiff's position was that the credit *should* have been applied to the outstanding balance on the Policy (not that it was made) and that such argument was an equitable estoppel claim.

B. Equitable Estoppel

Pursuant to New Jersey law, an "insurance agent" is a person authorized, in writing, by an insurance company to act as its agent, to solicit, negotiate or effect insurance contracts on its behalf or to collect insurance premiums and who may be authorized to countersign insurance policies on its behalf. N.J.S.A. 17:22A-2f. "An insurance company is liable for the acts done or contracts made by one of it agents within the scope of his actual or apparent authority, as a necessary or reasonable implication in order to effectuate other authority expressly conferred. Insurance companies are held impliedly to authorize their agents to do what is usual or necessary in the transaction of the insurance business." *Volker v. The Conn. Fire Ins. Co.*, 91 A.2d 883, 889 (N.J. Super. Ct. App. Div. 1952).

It is undisputed in the instant case that Carlson was duly authorized to act as an agent for Traveler's in connection with plaintiff's policies and has the authority to bind Travelers pursuant to a written agency agreement between Carlson and Travelers.[5] Although Travelers suggests that an insured cannot estop an insurer from relying on a valid cancellation of a policy because of misrepresentations made by an authorized agent, the Court disagrees. An insurance company may be equitably estopped from denying coverage where the forfeiture or lack of coverage is due to the reliance of the insured on the representations of the agent. As the court noted in *Harr v. Allstate Ins. Co.*, equitable estoppel may apply in those cases where "an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract . . . . and the insured reasonably relies thereupon to his ultimate detriment." 54 N.J. 287, 306 (1969); *see also Doto v. Russo,* 659 A.2d 1371, 1377 (NJ 1995) ("Nor have we permitted insurance companies to seek refuge in the literal language of their policies when the company's conduct and actions, or that of their agents, causes the insured to act or to fail to act based on that conduct."); *see generally Ivey v. United Nat'l Indem. Co.,* 259 F.2d 205, 208 (9th Cir. 1958) (holding that under California law, "an insurance company may by its conduct or dealings apart from the policy itself be estopped from denying . . . . coverage . . . . [when] the insured has been led to believe [it] is protected under the policy."); *Peninsular Life Ins. Co. v. Wade*, 425 So.2d 1181, 1183-84 (Fla. App. 2 Dist. 1983) (holding that estoppel may be used to broaden insurance contract coverage where the insurer makes misrepresentations before the policy is purchased).

Given that an equitable estoppel claim is legally cognizable if there is reasonable reliance on the representation of an insurer or its agent, the question in the instant case is whether there are material issues of disputed fact that preclude summary judgment in either party's favor on this issue. For the reasons discussed below, the Court believes there are such material issues of disputed fact as it

---

[5] The undisputed nature of that fact is reflected in the deposition of the general adjuster for Commercial Lines for Travelers, who testified as follows in his deposition: "Q. Do you know whether or not they [Carlson & Carlson] were the agent for this particular policy? A. I'm under the – yes, I believe they were – I believe at the time, they were the agent that issued the policy to Umar. . . . Q. As you sit here today, do you have any reason to believe that they [Carlson & Carlson] were not authorized to act as the agent for your insurance company? A. No, I do not." (Giordano Dep. 36-37, Mar. 9, 2007.)

relates to plaintiff's equitable estoppel claim. Specifically, the Court finds that there exists a disputed issue of material fact as to whether Ahsan Zubair, Umar's principal, instructed Carlson to apply the expected credit to the outstanding balance on the Policy and whether Carlson agreed to apply the credit to payment on the Policy. On that critical issue, Zubair gave the following testimony at his deposition:

> Q. . . . . There was a $1,527 overpayment on one policy and an $1,150 shortage on one policy; correct?
>
> A. Yes, sir.
>
> Q. Is it true that you requested Carlson & Carlson to correct this adjustment to apply the policy that was overpaid to the policy that was underpaid?
>
> A. Absolutely.
>
> Q. And to the best of your knowledge, did Carlson & Carlson say that they would be able to accomplish this task?
>
> A. Yes, sir.

(Zubair Dep. 97, Mar. 9, 2007.) Zubair recalled that this conversation took place in December 2005 or January 2006. (Zubair Dep. 84, Mar. 9, 2007.) Later in the deposition, Zubair gave further testimony regarding his conversations with Mr. Carlson:

> Q. When this billing dispute was occurring – the $1,527 overpayment and the $1,150 shortage – when you were discussing this with Carlson, did you ever ask him, "Is my policy at risk of being canceled"? Did you ask him that?
>
> A. Yes.
>
> Q. What did Mr. Carlson say to you?
>
> A. He said he is – he received this, you know, item. He said this money he's going to get applied towards my policies.

(Zubair Dep. 99, Mar. 9, 2007.)

In further support of its argument that Carlson agreed to transfer the overpayment to the delinquent payment on the Policy at issue, plaintiff also points to evidence that Mr. Carlson, as Travelers' authorized agent, had not received any notice of cancellation of the Policy as required under its agency agreement with Travelers. Specifically, plaintiff relies on the following evidence from Mr. Carlson's deposition:

> Q. . . . . Did you ever receive any notice of cancellation of the policy?
>
> A. We never got a proper notice that the policy was indeed cancelled.
>
> Q. Is it a requirement of Travelers, through your agency agreement, that they have to provide the cancellation notice to your agency?
>
> A. I believe that is part of the agreement.
>
> Q. Okay. If you receive that information, you would have been able to advise your client, the insured, wouldn't you have?
>
> A. Correct.

8

(Carlson Dep. 42-43, Apr. 27, 2007.) Thus, plaintiff asserts that this is corroborative evidence that plaintiff, Carlson, and Travelers were all in agreement, prior to the loss, that the credit would be applied to the shortage of the unpaid premium on the Policy at issue.

Finally, plaintiff relies on evidence that, after Travelers received notice of the May 22, 2006 fire loss, Travelers took almost four months to deny coverage for nonpayment of premium and, in that time, it performed a comprehensive investigation, assigning personnel to determine cause and origin of the May 22 fire, and conducted an analysis of damages suffered by Umar. According to plaintiff, a reasonable inference can be drawn from this fact that (1) Travelers and its agent, Carlson, knew there had an agreement to transfer the credit to the unpaid premium on the Policy that was not executed by Travelers, and (2) Travelers' denial of coverage for nonpayment is a pretext to conceal the error by Travelers through its agent, Carlson.

In contrast, Travelers argues that it is entitled to summary judgment on any equitable estoppel claim because Zubair's "self-serving" sworn testimony regarding this purported conversation with Carlson is completely lacking in credibility.[6] (Travelers' Reply Brief, at 9.) First, Travelers points to Carlson's deposition where Carlson testified that Zubair did not make a request to him to have return the premium under the CGL policy applied to satisfy the money owed on the Policy at issue and that there are no records documenting such conversation.[7] (Carlson Dep. 48-49, Apr. 27, 2007.) Second, Travelers argues that, even assuming *arguendo* that such a conversation took place, there is no explanation as to why Zubair ignored (1) memoranda warning him that the Policy was subject to cancellation for nonpayment, (2) the notice of cancellation, and (3) a report he received in February 2006, after he requested a billing history from Carlson, stating that the Policy was cancelled in January for nonpayment of premiums.[8] In

---

[6] As a threshold matter, to the extent Travelers argues that Zubair's testimony regarding Carlson's agreement to apply the credit to the outstanding balance on the Policy is inadmissible hearsay, the Court disagrees. Carlson's statements are admissible because Carlson is an agent of Travelers and, therefore, his statements are statements of a party-opponent. *See* Fed. R. Evid. 801(d)(2)(A) (admission by a party-opponent). Moreover, any statements by Zubair during such conversations are offered, not for their truth, but as context for the defendant's non-hearsay admissions. *See, e.g., United States v. Cheramie,* 51 F.3d 538, 541 (5th Cir. 1995) (holding admission of statements of unavailable witness as part of audio recording of defendant, over hearsay objection, was not error, where statements were admitted not for truth of matters asserted, but to establish context for recorded statements of defendant); *United States v. Gajo,* 290 F.3d 922, 929-30 (7th Cir. 2002) (holding statements of an informant may be admitted as non-hearsay to provide context to a conversation).

[7] Plaintiff notes that, although Lisa Hambric was an employee of Carlson at the time the alleged request to transfer the credit was made, Ms. Hambric is no longer employed with Carlson and was unavailable to offer testimony as to whether she requested to Travelers that the credit on the overpaid policy be applied to the Policy at issue here. (Plaintiff's Memorandum of Law, at 14.)

[8] The Court notes that, because Zubair is unsure as to whether the alleged conversation between Zubair and Carlson was in December 2005 or January 2006, the timing of that alleged

9

short, Travelers contends that, given such documentation, plaintiff could not have reasonably relied on any purported oral assurance by Carlson.

The Court recognizes that Zubair's testimony is significantly weakened by the correspondence between Travelers and plaintiff, the correspondence between Carlson and plaintiff, and Doug Carlson's deposition testimony. However, the Court cannot conclude, under a summary judgment standard, that plaintiff's equitable estoppel claim must fail as a matter of law. Issues regarding Zubair's credibility cannot be resolved by this Court. *See, e.g., Vital v. Interfaith Med. Center,* 168 F.3d 615, 621 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment."); *see also Curry v. City of Syracuse,* 316 F.3d 324, 333 (2d Cir. 2003) ("[I]t is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'") (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997)); *see also Huff v. Uarco, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) ("We do not imply that plaintiffs have a strong case but rather only that they have enough of a case to go to a jury.").

---

conversation in relation to some of these various notices is unclear. (Zubair Dep. 84, Mar. 9, 2007.) However, the exact timing of the alleged conversation in the context of these various notices is not critical to the Court's conclusion that summary judgment is unwarranted.

Viewing the evidence in a light most favorable to Umar, including fully crediting Zubair's testimony and drawing all reasonable inferences in plaintiff's favor, a reasonable jury could find that Carlson agreed that the credit be transferred to the outstanding balance owed on the Policy. In particular, if a jury credits Zubair's testimony and draws all reasonable inferences in plaintiff's favor, it could conclude that he reasonably relied on Carlson's representation and ignored any documentation he received after such conversation regarding cancellation of the Policy because he believed that Travelers was still is the process of correcting the paperwork so that the credit would be applied to the Policy with the delinquent payment. In short, the Court is not finding that plaintiff will ultimately prevail on its claim, but rather that the disputed issues of material fact preclude summary judgment in defendant's favor.[9]

In sum, although the Court finds that defendant followed the required provisions of New Jersey law in effectuating the cancellation, material issues of fact exist as to whether defendant should be equitably

---

[9] Although plaintiff has cross-moved for summary judgment based on Zubair's testimony, that motion is similarly denied. The same disputed issues of fact that preclude summary judgment in Travelers' favor also require plaintiff's cross-motion to be denied. In other words, viewing the evidence in a light most favorable to Travelers, and drawing all inferences in its favor, including inferences from the correspondence sent by Carlson and Travelers, and Doug Carlson's deposition testimony, a reasonable jury could certainly reject Zubair's testimony that Carlson agreed that the credit be transferred to the outstanding balance on the Policy and/or conclude that plaintiff could not have reasonably relied on such a representation under the facts of this case.

estopped from canceling the Policy – namely, a jury must decide whether Zubair requested that Carlson transfer the credit from one of Umar's other policies with Travelers to the Policy in question, whether Carlson agreed to make such a transfer, and whether Umar reasonably relied on such a representation if it was made.[10]

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED and plaintiff's cross-motion for summary judgment is DENIED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 24, 2008
Central Islip, New York

\* \* \*

The attorney for the plaintiff is Jeffrey A. Sunshine, 5 Dakota Drive - Suite 204, Lake Success, NY 11042. The attorneys for the defendant are Judith Treger Shelton and Timothy E. Delahunt, of Kenney, Shelton, Liptak, Nowak LLP, 510 Rand Building, 14 Lafayette Square, Buffalo, NY, 14203.

---

[10] At oral argument, Travelers also suggested that there may be issues regarding whether Carlson had actual or apparent authority to make such representations to Umar as Travelers' agent. Thus, Travelers also has reserved its right to make such an argument in connection with the trial.